296 S.E.2d 901

Charles BAILEY

v.

SWCC and Eastern Associated Coal Corp.

Delmar Eugene BERRY

v.

SWCC and Orders & Haynes Paving Company.

Kay W. CHAPMAN

v.

SWCC and G.C. Murphy Co.

Nos. 15479, 15462 and 15459.

Supreme Court of Appeals of West Virginia.

June 24, 1982.

772

Kay W. Chapman, pro se, for appellants.

Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty and George E. Roeder, III, Charleston, for appellees.

NEELY, Justice:

We have consolidated the appeals in these three cases in order to consider whether to adhere to prior decisions holding that non-compliance with directory time limitations of the Workmen's Compensation Act erects a jurisdictional hurdle that can

never be overcome. No convincing reason to adhere to that proposition presents itself, so today we overrule our holdings concerning the jurisdictional nature of time periods in *Spaulding v. State Workmen's Compensation Commissioner*, 157 W.Va. 849, 205 S.E.2d 130 (1974); *Baker v. State Workmen's Compensation Commissioner*, 143 W.Va. 536, 103 S.E.2d 391 (1958); *Whited v. State Workmen's Compensation Commissioner*, 131 W.Va. 646, 49 S.E.2d 838 (1948); *Bowdler v. State Workmen's Compensation Commissioner*, 124 W.Va. 629, 22 S.E.2d 359 (1942), and any other case holdings to the effect that statutory time limitations under the Workmen's Compensation Act operate as a limit on the jurisdiction of the Court, the appeal board or the commissioner.

We further overrule all previous opinions holding that compliance with time limitations is absolutely mandatory. *Nichols v. State Compensation Commissioner*, 111 W.Va. 34, 160 S.E. 854 (1931); *Myers v. State Compensation Commissioner*, 110 W.Va. 425, 158 S.E. 512 (1931); *Enyart v. State Compensation Commissioner*, 109 W.Va. 613, 155 S.E. 913 (1930).

The appellants, Kay Chapman, Delmar Berry and Eugene Bailey, have all run afoul of statutory time limitations in their prosecution of Workmen's Compensation claims. Mrs. Chapman, who was represented by counsel in her hearings before the Workmen's Compensation Commissioner, appeals *pro se* from an order of the Appeal Board dated 30 September 1981. On 6 November 1981 we received her request for appeal dated 2 November. Her appeal thus exceeds by a few days the thirty-day time period allowed for appeals to this Court.

Mr. Berry is alleged to have been late in giving notice of appeal of the Board's final order of 31 March 1981. A letter dated 27 April 1981 signed by Mr. Berry and his counsel and acknowledging receipt of the order was received by the Workmen's Compensation Fund on 28 April. Another letter

of 27 April, identical in every respect except adding the language "and we do protest the same" was received on 26 October 1981. The circumstances of this second letter's delay are unexplained.

The third appellant, Mr. Bailey, was injured in a work-related accident on 22 March 1971. On 30 December 1971 he was awarded a permanent partial disability of five percent which was increased to thirty percent and then sixty percent as a result of further proceedings on 11 March 1975 and 19 April 1977. In both awards, previous temporary total disability payments were subtracted from the permanent partial disability payment. The law requiring this subtraction had been changed on 1 July 1971—three months after the injury—so that such subtractions were no longer authorized. On 15 October 1979 Mr. Bailey petitioned the Commissioner for the amount subtracted from his award. This petition was denied, and the Commissioner's decision was affirmed by the Appeal Board on 29 January 1981. Timely notice of appeal was filed with this Court. Mr. Bailey, however, had not filed a notice of appeal within thirty days of receipt of the Commissioner's final order of 19 April 1977.

The appellees in these cases contend that the appellants' failures to file timely notice of appeal operate as jurisdictional bars. In the past this Court has given ample authority for this proposition. *See, e.g., Spaulding v. State Workmen's Compensation Commissioner, supra; Baker v. State Compensation Commissioner, supra.* However, the question of jurisdiction has never been fully considered by this Court.

I

■ Two considerations immediately present themselves. The first is that a literal application of the jurisdictional rule as defined in syllabus point 1 of *Sudraski v. State Compensation Commissioner*, 116 W.Va. 441, 181 S.E. 545 (1935),[1] would

1. In syllabus point 1 of *Sudraski v. State Compensation Commissioner, supra,* the Court held:

A limitation qualifying a special statutory right is generally held to be unaffected by the disabilities and excuses which allay ordinary

preclude fraud, mistake, and the equitable principles of waiver and estoppel from tolling statutory time limitations. Such an extreme result, although it logically follows from the rule, has never been countenanced by this Court. We resolved this predicament by our holding in *Lester v. State Workmen's Compensation Commissioner*, 161 W.Va. 299, 242 S.E.2d 443 (1978) rejecting the *Sudraski* rule. Thus a literal application of the "jurisdictional" theory has already been foreclosed by prior holdings.

Second, we note that the characterization of time periods as jurisdictional is a creation of this and other courts, and not usually the legislatures. With respect to appeals to this Court, the statutory language simply states that, "[f]rom any decision of the board ... an application for review may be prosecuted ... to the Supreme Court of Appeals within thirty days from the date thereof..." *W.Va.Code*, 23–5–4 [1945]. The statute is silent on jurisdiction.

The jurisdictional theory of time limitations arose from an early misconception of the nature of workmen's compensation statutes. In the early days of workmen's compensation it was necessary for compensation programs to appear voluntary in order to satisfy contemporary standards of constitutionality.[2] Cases held that a claimant's right to "participate" in the compensation program depended on his satisfaction of statutory requirements. *See, e.g., Moorefield v. State Compensation Commissioner*, 112 W.Va. 229, 164 S.E. 26 (1932). Later cases recognized that the workmen's compensation system was a product of state police power and that "participation" was, in fact, compulsory. *Lester, supra; Rogers v. State Compensation Commissioner*, 140 W.Va. 376, 84 S.E.2d 218 (1954); *Blevins v. State Compensation Commissioner*, 127 W.Va. 481, 33 S.E.2d 408 (1945). The seeds had been sown, however, for an exclusive reading of statutory limitations and, in the rich soil of

some now-discredited constitutional doctrines, they flourished.

The term "jurisdiction" was current in cases where the commissioner sought to reopen closed claims. *See, e.g., Pauley v. State Compensation Commissioner*, 111 W.Va. 456, 162 S.E. 891, 892 (1932); *Burdette v. State Compensation Commissioner*, 111 W.Va. 299, 161 S.E. 556, 557 (1931). It was also current because this Court was struggling to do justice under its original jurisdiction, namely by using writs of prohibition and mandamus, to review Workmen's Compensation decisions at a time when procedures in administrative law were enormously primitive. *Butch v. State Compensation Commissioner*, 112 W.Va. 493, 165 S.E. 672, (1932); *Proffitt v. State Compensation Commissioner*, 108 W.Va. 438, 151 S.E. 307 (1930). In most decisions concerning time limitations, language going to jurisdiction did not appear. The Court stated simply that compliance was "mandatory" or the decision "final and unappealable." *Harris v. State Compensation Commissioner*, 125 W.Va. 550, 25 S.E.2d 190 (1943); *Cook v. State Compensation Commissioner*, 113 W.Va. 370, 168 S.E. 369 (1933).

Where jurisdiction was mentioned, the Court was circumspect in its use of the term. In an early case where the issue of jurisdiction came before the Court we avoided the issue, observing that compliance was "mandatory," but excusing the claimant on the grounds that a technical flaw in the Commissioner's order prevented it from being final. *Harris, supra*. In a slightly later case the Court used "jurisdictional" in quotation marks, clearly a reluctant and qualified usage of the term. *Stewart v. State Compensation Director*, 150 W.Va. 103, 144 S.E.2d 327 (1965).

The rule of *Sudraski, supra*, was cited with approval and followed in *Young v. State Workmen's Compensation Commissioner*, 121 W.Va. 126, 3 S.E.2d 517 (1939) and its companion case *Pridgen v. State*

---

statutes of limitation, and to be such an inherent part of the statute which operates the right, that the right itself does not survive the limitation.

**2.** For a thorough review of this issue in historical perspective see *Lester, supra*.

*Workmen's Compensation Commissioner*, 121 W.Va. 136, 3 S.E.2d 522 (1939). Although neither *Sudraski, Young* nor *Pridgen* actually used the term "jurisdictional," in *Bowdler v. State Workmen's Compensation Commissioner*, 124 W.Va. 629, 22 S.E.2d 359 (1942) the Court stated that "language ... that a dependent must file application within one year ... we have held to be jurisdictional," *id.*, 124 W.Va. at 632–633, 22 S.E.2d at 632, and cited *Young* and *Pridgen* as authority for that proposition. This inartful identification of a strict view of statutory limitations with the jurisdiction of the Court has since been accepted in *Spaulding v. State Workmen's Compensation Commissioner, supra; Bailes v. State Workmen's Compensation Commissioner*, 152 W.Va. 210, 161 S.E.2d 261 (1968); *Baker v. State Workmen's Compensation Commissioner, supra;* and *Whited v. State Workmen's Compensation Commissioner, supra.*

The history of this usage is instructive because it indicates that the term, and the conclusions its use would seem to suggest, have never been squarely adopted by the Court. The easy jurisdictional technique for ending litigation was, to past courts unsympathetic to claimants, irresistible. The theory, however, was unfounded, and its continued survival is not the result of judicial authority, but rather judicial inertia and neglect.

In recent decisions we have demonstrated our disenchantment with the jurisdictional doctrine. *Lester, supra*, rejected the *Sudraski* rule from which the doctrine has sprung and stated that a time limitation was "basically procedural and remedial in nature." *Lester*, 161 W.Va. at 305, 242 S.E.2d at 447. In *Spaulding, supra*, we held, with respect to the issue before the Court, that the procedural rule governing form of notice was not jurisdictional. Although we did not disturb the doctrine with respect to time limitations, we observed that a proper decision may require, "in

addition to a reading of the pertinent statute and rules and regulations of the appeal board, an examination and thoughtful consideration of the purpose and spirit of workmen's compensation laws." *Id.*, 157 W.Va. at 852, 205 S.E.2d at 132. If the statute and rules and regulations are jurisdictionally limiting then the above statement is a nullity—the very examination and consideration would be beyond our jurisdiction.

In view of the silence of the legislature, the logical flaws attendant on abiding by the jurisdictional doctrine become compelling. The casual adoption of the doctrine by this Court and the lack of cogency of its early history also militate in favor of revision. We do not hesitate, therefore, to strike it down and hold that all time limitations under the Workmen's Compensation Act are procedural, and not jurisdictional, and that the intent of the legislature in enacting them was directory.[3]

## II

■ Having unburdened ourselves of the jurisdictional doctrine, we are now able to address squarely the question of how the time limitations under the Workmen's Compensation Act should be applied. To hold merely that these limitations are procedural gives little guidance for the future. Certainly, orderly procedure demands adherence to time limitations. Historically the sanction imposed on those who are indifferent to procedural rules is forfeiture. Consequently, unjustified disregard of rules must, in deference to a policy that demands some point of repose for claims, result in forfeiture.

Illumination regarding acceptable excuses for noncompliance with time limitations is provided by Rule 60(b) of the *West Virginia Rules of Civil Procedure* and Rule 37(b) of the *West Virginia Rules of Criminal Procedure*. In keeping with the spirit of these rules we hold that after a statutory period has run a claimant or his legal representative may be excused from failure

---

**3.** Of course where the statutory language clearly indicates that this is not the case, a court must not exceed its authority with specious "constructions." An example of such language is the proviso in the Virginia Workmen's Compensa- tion Act stating that "the right to compensation under this Act shall be forever barred unless a claim be filed ... within two years." Va.Code, § 65.1-87 [1975].

to file timely notice under the Workmen's Compensation Act for any of the following reasons: innocent mistake, excusable neglect, unavoidable cause, any fraud, misrepresentation or other misconduct of an adverse party, or any other reason justifying relief from the running of the time period.[4]

■ In any future claim filed after the running of a time period the late claimant or his legal representative shall append to his filing a statement of reasons in affidavit form, along with supporting affidavits where appropriate, explaining his delay. The tribunal before which the claimant or his legal representative seeks to be heard shall make a preliminary decision, independent of the merits of the claim, as to whether excuse of the delay is warranted. This decision should take into account the compelling needs for certainty, finality, and orderly administrative procedure which the time periods were enacted to satisfy. It must also take into consideration the compensatory nature of the Workmen's Compensation Act and the consequent importance of full and fair hearings on the merits of claims brought under the act.

■ Our holding today should not be considered a judicial declaration of open season on statutory time limitations—it is limited to the Workmen's Compensation Act. This statute, by its beneficient and remedial character, distinguishes itself from other statutes whose purpose is custodial or regulatory. The precise effect and literal application unarguably due most statutory provisions are inappropriate to the Workmen's Compensation program, since it does not create statutory rights, but rather replaces with statutory remedies the common law rights its beneficiaries are denied.

Prior West Virginia case law placing the compensation act's time limitations in a jurisdictional context was written when such a conclusion was entirely consistent with the rest of the legal landscape in civil law. Now, however, Rhadamanthine application of procedural requirements would be entirely incongruent with the topography of today's legal landscape outside of Workmen's Compensation, although it does appear, for some unfathomable reason, to be almost the universal rule in compensation elsewhere.[5] The *Federal Rules of Civil*

---

**4.** By so doing we adopt the prevailing rule governing notice of claims. *See, e.g.,* Okl.Stat. tit. 85, § 24. Notice of an injury for which compensation is payable under this Act shall be given to the Commission and to the employer within thirty (30) days after injury, ... The failure to give such notice, unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier or employer, as the case may be has not been prejudiced thereby, shall be a bar to any claim under this Act.

The case law governing notice of claims is aptly summarized by C.J.S.; "[B]ecause it is realized that honest claimants might unjustly lose their rights to compensation unless there were exceptions to the requirement of notice ... it has been variously held that claimant is not deprived of his right to compensation because of his failure to give, or because of a defect or delay in giving, the requisite notice, where occasioned by accident, mistake, incapacity or inability, unforeseen cause, or any other good or reasonable cause, especially where the default was not prejudicial." 100 C.J.S. Workmen's Compensation § 450.

The application of this rule to notice of appeal seems fairly elementary since, as Professor Larson has observed: "The underlying reasons sup-

porting the relaxation of strict and technical procedural requirements apply with equal force to appeals at both the administrative and the judicial levels" A. Larson, *The Law of Workmen's Compensation,* Vol. 3, § 78.12, 1976. Surprisingly, however, and particularly so in an age characterized by the relaxation of procedural rules at all levels of adjudication, there is, except for the admirable holdings of our Arizona brethren (note 5, infra), a complete dearth of authority for a broad and humane reading of statutory time periods for filing notice of appeal. With respect to notice of appeal, therefore, we have been unable to adopt the better rule—we have had to write it.

**5.** Colorado and Texas have both held that petitions for review mailed within time limits will not excuse their late receipt, even if mailed in sufficient time to allow for timely delivery, *Yancy v. Texas General Indemnity,* 425 S.W.2d 683 (Tex.Civ.App.1968) or arriving only one day late, *McKenna v. Industrial Commission,* 42 Colo.App. 305, 596 P.2d 405 (1979). Georgia has held that an appeal received at the Capitol Hill Post Office on the last day of the appeal period but not delivered to the State Board of Workmen's Compensation and marked filed until the following day, was correctly denied review. *Argonaut Insurance Co. v. Hamilton,* 146 Ga.App.

*Procedure* and the *West Virginia Rules of Civil Procedure* both articulate a policy of deciding civil controversies on their merits, and both procedural systems are to be applied "to do substantial justice." *Fed.R. Civ.P.* 1, Rule 1, *W.Va.R.Civ.P.*

We are not persuaded that legislative acquiescence in our "jurisdictional" rule can be taken as an expression of legislative intent. The failure of harried legislatures awash in statutes to modify or explain statutory details is as likely the result of inattention or overwork as it is of implicit legislative approval. In this context, pavid reluctance to forge legal principles where the expression of the legislature's will is unclear, obsolete, or nonexistent, is inappropriate for a court.[6] Furthermore the alternative—an attempt to attract the legislature's attention by sacrificing these appellants on the altar of judicial deference—is distasteful to us. If the legislature does intend to have strict time limitations, they can amend the statutes to express that intent explicitly, as the Virginia Legislature has done. See note 2, *supra*.

■ Although the rule we articulate today does allow some leeway for the commissioner, appeal board, and this Court to do substantial justice, none of these agencies can be cavalier about the legitimate goals of statutory periods for repose. While a filing several days late can seldom be considered to confound an employer's reliance interest, a filing several years late is impossible to defend on the merits. Evidence is lost, witnesses are no longer available or have forgotten the events that transpired. Consequently, regardless of how excusable the neglect on the part of the claimant, any legitimate reliance interest on the part of the employer must be taken into account in every case of late filing. If the reliance interest outweighs the excuse of the claimant, his claim cannot be allowed.[7]

■ Finally, while fraud, mistake, and unavoidable cause are fairly easy to spot, excusable neglect is a more open-ended concept. In general, cases arising under the civil rules are comparatively strict about the grounds for a successful assertion of excusable neglect.[8] We will follow these cases in Workmen's Compensation because there must be some sanction imposed on those who do not exercise due diligence.

---

195, 196, 245 S.E.2d 882 (1978). Kentucky dismissed a claim filed two days late, although the order was not mailed until four days after it was rendered. *Lockard v. Workmen's Compensation Board*, 554 S.W.2d 396 (Ky.App.1977). Washington has held that although the state had actual notice, no jurisdiction to review accrued unless the statutory steps were taken. *Smith v. Department of Labor and Industries*, 23 Wash. App. 516, 596 P.2d 296 (1979).

Relief from this gallery of horrors is provided only by Arizona's holdings in *Parsons v. Bekins Freight*, 108 Ariz. 130, 493 P.2d 913 (1972) and the companion cases following it, *Janis v. Industrial Commission*, 111 Ariz. 362, 529 P.2d 1179 (1974) and *Chavez v. Industrial Commission*, 111 Ariz. 364, 529 P.2d 1181 (1974) which have established the rule that ". . . if a claimant appears to have a meritorious position and the facts do not establish an excessive delay, and the delay does not prejudice the insurance carrier, the interests of justice require that the untimeliness of the filing be waived." *Janis*, 529 P.2d at 1180.

**6.** See, G. Calabresi, *A Common Law for the Age of Statutes* (1982).

**7.** With respect to reliance, we reiterate our *dictum* in *Rosier v. Garron*, 156 W.Va. 861, 199 S.E.2d 50 (1973) that this Court is suspicious of the validity of reliance interests arising from procedural errors where the "error of an adversary is but a windfall to his opponent."

**8.** The scope of excusable neglect under the Federal Rules has been summarized as follows:

Excusable neglect has proven to be an elastic concept. During the first few years following the promulgation of the federal rules, the courts adopted a lenient attitude regarding failures to observe the time requirements of the rules, no doubt partially because the bar had not yet become fully conversant with them. Today, however, counsel should not expect an application under Rule 6(b)(2) to be granted when failure to act was due to simple inadvertence or a mistake regarding the content of the rules or unfamilarity with them. Excusable neglect seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules. Absent a showing along these lines, relief will be denied.

Wright and Miller, *Federal Practice and Procedure:* Civil § 1165.

As long as everyone in the system continues to make every effort to comply with procedural time limitations, the problem of late filing will be kept within manageable proportions, and our new rule can be applied with liberality when a deviation is technical and *de minimis*. If practitioners conclude that lack of reasonable diligence will always be excused because of the Court's sympathy for the claimant, then a return to an interpretation as strict as the old "jurisdictional" doctrine will be inevitable.

In short, today's landmark holding is unparalleled in the United States and is an experiment. Only time will tell whether we and Arizona are correct, or whether the trail we blaze leads to an inhospitable desert. In the recent past we have not been reluctant to overrule prior case law, and this case stands as no exception. If the rule does not work, then it too shall pass.

It only remains now to apply the rule to the cases at hand.

■ In the case of Mrs. Chapman we will, for the convenience of the parties, waive the requirement of an appended statement of reasons as we have sufficient facts before us now to make a decision. Allowing for the three-day mailing period provided by *Dyer v. Commissioner*, No. 14512 (W.Va. October 23, 1979) (per curiam order) the letter was written within the time period. In the case of a *pro se* appeal, so long as the letter arrives promptly, for the claimant to have confused the date of the letter with the date of actual filing is excusable neglect. We do not believe that a reliance interest springs, Athena-like, full grown into being at the instant a time period is up. In this case the reliance interest of the appellees in finality and certainty does not outweigh the interest of Mrs. Chapman in a full and fair hearing.

■ Proceeding to the merits of her claim, we note that Mrs. Chapman was denied permanent partial disability benefits in spite of the testimony of three of four doctors who testified to claimant's medical condition. Of the four doctors, only one stated that claimant was not disabled as a result of the work-related injury. The other three doctors testified variously that claimant was twenty-five percent disabled by the work-related injury, two percent disabled by the work-related injury, and twenty-five percent disabled as a result of an unspecified combination of previous impairment and work-related injury. Given this testimony, the Commissioner's view that claimant is entitled to no permanent partial disability could not have taken into account all of the factors, and is clearly wrong. We remand this case to the Commissioner, overruling the appeal board's holding that claimant receive no permanent partial disability benefits and direct that Mrs. Chapman be granted a permanent partial disability.

■ In the case of Mr. Berry, receipt of his protesting letter was anything but prompt. We therefore cannot make a decision without further evidence, and remand his case to the Commissioner for a finding of fact concerning the mystifying circumstances of his letter's long delay.

The third and final case is that of Mr. Bailey. The lateness issue arises from his petition of 15 October 1979 seeking to overturn the Commissioner's 19 April 1977 final order granting him a sixty percent permanent partial disability, but subtracting from that award temporary total disability payments in excess of fifteen weeks. Mr. Bailey seeks to have his award modified on the basis of this Court's holding in *Campbell v. State Workmen's Compensation Commissioner*, No. 14157 (W.Va. July 11, 1978) (per curiam order). In *Campbell* we held that the legislature's amendment of *W.Va. Code*, 23-4-6(j) [1978] directing that temporary total disability payments not be deducted from a permanent partial disability award will apply to cases arising from injuries occurring before the amendment so long as the final order of the Commissioner was made subsequent to the date of the amendment. *Campbell* was decided in July 1978 and it was not until that decision was handed down that claimant could have been sure of the application of the amendment to his case.

In these circumstances we find Mr. Bailey's failure to file on time excusable. It would, in fact, make a mockery of our holdings in *Campbell* and, more recently, *Pnakovich v. State Workmen's Compensation Commissioner*, 163 W.Va. 583, 259 S.E.2d 127 (1979) to hold now that a claimant's appeal was meritorious (although he did not know it) but that the claim was foreclosed because the time period ran out before our decision gave claimant notice of its merit. Further, though the prosecution of this claim could hardly be considered vigorous since *Campbell* was decided, we cannot expect instant response to our clarifications of the law, and we are satisfied with claimant's counsel's petition of 15 October 1979 to reopen his client's claim on the basis of *Campbell.* We therefore remand this case to the Commissioner and direct that she modify claimant's award to reflect our holdings in *Campbell* and *Pnakovich,* and expressly overrule the subtraction of temporary total disability payments in excess of fifteen weeks from the claimant's permanent partial disability award.

It is so ordered.

No. 15459 Remanded to the Commissioner with directions.

No. 15462 Remanded to the Commissioner for further proceedings.

No. 15979—Remanded to the Commissioner with directions.